UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| U.S. WIRELESS LOCATION | ) | Case No. 01-10262 (CSS) |
| TECHNOLOGIES, INC. AND WIRELESS | ) | (Jointly Administered) |
| LOCATION SERVICES, INC., | ) | |
| | ) | |
|    Debtors. | ) | |
| | ) | |
| THE LIQUIDATING TRUST OF U.S. | ) | |
| WIRELESS LOCATION TECHNOLOGIES, | ) | |
| INC. AND WIRELESS LOCATION | ) | |
| SERVICES, INC., | ) | Adv. Proc. No. 07-51413 (CSS) |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MATI WAX, | ) | |
| | ) | |
|    Defendant. | ) | |

## NOTICE OF APPEAL

       Mati Wax, the defendant (the "Defendant") in the above-captioned

adversary proceeding, by and through his undersigned counsel, hereby gives notice,

pursuant to 28 U.S.C. § 158(a) and Rules 8001 and 8002 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), of its appeal to the United States

District Court for the District of Delaware from the final order of the United States

Bankruptcy Court for the District of Delaware entitled *Order* (Adv. Proc. Docket No. 27)

(the "Order"), which order was dated and entered on April 9, 2008 and the related

*Opinion* (Adv. Proc. Docket No. 26) (the "Opinion"), which was dated and entered on

April 9, 2008.  A copy of the Order and the Opinion are attached as Exhibits 1 and 2,

respectively.

Pursuant to Bankruptcy Rule 8004, the Defendant hereby requests that the

Clerk of the Bankruptcy Court provide notice to counsel of record for the interested

parties.  The parties to the judgment appealed from and the names, addresses and

telephone numbers of their respective counsel are as follows:

| Counsel to Defendant Mati Wax | Counsel for Plaintiff, The Liquidating Trust of U.S. Wireless Corporation, Inc., Wireless Location Technologies, Inc., and Wireless Location Services, Inc. |
|---|---|
| LEVINE & BAKER LLP<br>Richard E. Levine (CA Bar No. 88729)<br>One Maritime Plaza, Suite 400<br>San Francisco, CA  94111<br>Telephone:  (415) 391-8177<br>Facsimile:  (415) 391-8488<br>     rlevine@<br>and<br>PACHULSKI STANG ZIEHL & JONES LLP<br>Laura Davis Jones (Bar No. 2436)<br>Kenneth H. Brown (CA Bar No. 110345)<br>Curtis A. Hehn (Bar No. 4264)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE  19899-8705<br>Telephone:  (302) 652-4100<br>Facsimile:  (302) 652-4400<br>     ljones@pszjlaw.com<br>     kbrown@pszjlaw.com<br>     chehn@pszjlaw.com | KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP<br>Richard M. Beck<br>Christopher A. Ward<br>919 Market Street, Suite 1000<br>Wilmington, DE  19801<br>Telephone:  302.426.9193<br>Facsimile:  302.426.9193<br>     rbeck@klehr.com<br>     cward@klehr.com |
| United States Trustee | |
| Mark S. Kenney<br>Office of the U.S. Trustee<br>844 King Street<br>Suite 2207, Lockbox 35<br>Wilmington, DE 19801<br>Telephone:  302-573-6491 | |

Dated:  April 16, 2008

LEVINE & BAKER LLP
Richard E. Levine (CA Bar No. 88729)
One Maritime Plaza, Suite 400
San Francisco, CA  94111
Telephone:  (415) 391-8177
Facsimile:  (415) 391-8488

and

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
Kenneth H. Brown (CA Bar No. 110345)
Curtis A. Hehn (Bar No. 4264)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Counsel for Defendant Mati Wax

# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| U.S. WIRELESS CORPORATION, INC., | ) Case No. 01-10262 |
| WIRELESS LOCATION | ) through 01-10264 (CSS) |
| TECHNOLOGIES, INC., AND WIRELESS | ) |
| LOCATION SERVICES, INC., | ) |
| | ) |
| Debtors. | ) |
| _____ | ) |
| THE LIQUIDATING TRUST OF U.S. | ) |
| WIRELESS COPRORATION, INC., | ) |
| WIRELESS LOCATION | ) |
| TECHNOLOGIES, INC., AND WIRELESS | ) |
| LOCATION SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No.07-51413(CSS) |
| | ) |
| MATI WAX, | ) |
| | ) |
| Defendant. | ) |

<u>**ORDER**</u>

For the reasons set forth in the Court's opinion of this date the Court

grants the Plaintiff's motion for summary judgment and denies the Defendant's

motion for summary judgment.

_____
Christopher S. Sontchi
United States Bankruptcy Judge

Dated:  April 9, 2008

Date 4-9-08
Docket # 27

# EXHIBIT 2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| U.S. WIRELESS CORPORATION, INC., | ) Case No. 01-10262 |
| WIRELESS LOCATION | ) through 01-10264 (CSS) |
| TECHNOLOGIES, INC., AND WIRELESS | ) |
| LOCATION SERVICES, INC., | ) |
| | ) |
|     Debtors. | ) |
| _____ | ) |
| THE LIQUIDATING TRUST OF U.S. | ) |
| WIRELESS COPRORATION, INC., | ) |
| WIRELESS LOCATION | ) |
| TECHNOLOGIES, INC., AND WIRELESS | ) |
| LOCATION SERVICES, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No.07-51413(CSS) |
| | ) |
| MATI WAX, | ) |
| | ) |
|     Defendant. | ) |

## OPINION[1]

| | |
|---|---|
| KLEHR, HARRISON, HARVEY | LEVINE & BAKER LLP |
| BRANZBURG & ELLERS LLP | Richard E. Levine |
| Richard M. Beck | One Maritime Plaza, Suite 400 |
| Christopher A. Ward | San Francisco, CA 94111 |
| 919 Market Street, Suite 1000 | |
| Wilmington, DE 19801 | PACHULSKI STANG ZIEHL & JONES LLP |
| | Laura Davis Jones |
| **Counsel for Plaintiff, The** | Kenneth H. Brown |
| **Liquidating Trust of U.S.** | Curtis A. Hehn |
| **Wireless Corporation, Inc.,** | P.O. Box 8705 |
| **Wireless Location Technologies,** | Wilmington, DE 19899-8705 |
| **Inc., and Wireless Location** | |
| **Services, Inc.** | **Counsel for Defendant, Mati Wax** |

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

Date 4-9-08
Docket # 26.

Dated: April 9, 2008

Sontchi, J. *Clfrli Shtl*

## INTRODUCTION

Before the Court is an action to subordinate a claim brought by Mati Wax, a former employee of the Debtors. The Liquidating Trust initiated this adversary proceeding because it believes that a portion of Mr. Wax's claim is for damages arising from the purchase and sale of a security and, thus, must be subordinated under section 510(b) of the Bankruptcy Code. For the reasons set forth below, the Court agrees with The Liquidating Trust and grants summary judgment in its favor.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K) and (O).

## STATEMENT OF FACTS

### I. Procedural Background

On August 29, 2001 ("Petition Date"), U.S. Wireless Company ("U.S. Wireless") and two of its affiliates (collectively, the "Debtors") filed voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code.[2]    Under the
confirmed plan in these cases, the assets and liabilities of the Debtors were
consolidated and transferred to The Liquidating Trust of U.S. Wireless
Corporation, Inc., Wireless Location Technologies, Inc., and Wireless Location
Services, Inc. ("The Liquidating Trust" or "Plaintiff").[3]    Executive Sounding
Board Associates Inc. was appointed as Liquidating Agent ("Liquidating Agent")
for The Liquidating Trust and given the power to object to, liquidate, classify and
satisfy all claims against the Debtors' estates and to prosecute all causes of action
on behalf of the Debtors' estates.[4]

This adversary proceeding was commenced when the Liquidating Agent
filed an Adversary Complaint ("Complaint") on behalf of the Plaintiff in May,
2007.[5]    Through the Complaint, the Plaintiff seeks to subordinate under section
510(b) of the Bankruptcy Code the unsecured claim of Mati Wax ("Wax" or
"Defendant") in the amount of approximately $2.7 million.[6]

In response to the Complaint, Wax filed an Answer.[7]    The Plaintiff and the
Defendant subsequently agreed to and filed a Stipulation of Facts By and

---

[2] Adversary Complaint, ¶ 6.

[3] *Id.* at ¶ 10.

[4] *Id.* at ¶ 11.

[5] [Docket Entry 1].

[6] Complaint, ¶ 29 ("[T]he Liquidating Trust has brought this action to subordinate Wax's claims relating [to the] Securities Award in the aggregate amount of $2,749,082.26 to all other general unsecured creditors pursuant to Section 510(b) of the Bankruptcy Code.").

[7] [Docket Entry 6].    The Defendant raised various affirmative defenses in the Answer that this Court need not address in this Opinion.

Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax ("Stipulation").[8] Shortly thereafter, the parties filed cross-motions for summary judgment.[9] Briefing was completed in December, 2007, and the Court heard oral argument on the parties' cross-motions for summary judgment in January, 2008. This matter is now ripe for decision.

## II. General Background

On July 17, 1996, Mati Wax accepted the position of Chief Technology Officer of Labyrinth Communications Inc. ("Labyrinth"), a subsidiary of U.S. Wireless.[10] According to the letter agreement between Wax and Labyrinth, Wax was to receive a salary of $100,000 per year and an equity package ("Equity Package") consisting of five percent of the shares of Labyrinth (50,000 shares) and 100,000 warrants of U.S. Wireless at $2.00.[11] Wax also entered into an employment agreement with Labyrinth, an option agreement with U.S. Wireless, and a restricted stock agreement with Labyrinth.[12] These agreements elaborated on and further memorialized the initial letter agreement between Wax and Labyrinth. On January 12, 1998, Wax's employment agreement was amended to reflect the merger of Labyrinth together with and into U.S. Wireless.[13] As part of

---

[8] [Docket Entry 10].

[9] [Docket Entries 14 and 18].

[10] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶1 (Exhibit A, p. 1).

[11] *Id.*

[12] *Id.* at ¶¶ 2, 3 and 4 (Exhibits B, C and D).

[13] *Id.* at ¶ 8 (Exhibit H, p. 1).

the amendment, Wax received U.S. Wireless common stock in exchange for his
Labyrinth stock.[14]

In 1999, a dispute arose between U.S. Wireless and Wax concerning Wax's
employment, and, as a result, U.S. Wireless terminated Wax's employment on or
about June 10, 1999.[15]  In connection with his termination, Wax filed a complaint
for breach of contract and breach of the implied covenant of good faith and fair
dealing against U.S. Wireless in the Superior Court of California in and for the
County of Contra Costa.[16]  The parties agreed to transfer the dispute to the
American Arbitration Association ("AAA Proceeding").[17]  At the conclusion of
the AAA Proceeding, the arbitrator awarded Wax $2,775,416.26 of which
$26,333.00 was attributable to actual wages and expenses owed to Wax under his
employment agreement.[18]  The arbitrator based the remaining $2,749,082.26 of
damages on: (1) the loss of 91,707 unvested restricted shares lost by Wax as a
result of his termination; (2) 33,333 unvested stock options lost by Wax as a result
of his termination; (3) U.S. Wireless's failure to remove the transfer restrictions
pursuant to SEC Rule 144 on restricted shares owned by Wax; and (4) Wax's
claim regarding U.S. Wireless's failure to include him in a private offering of U.S.

---

[14] *Id.* at ¶ 8 (Exhibit H, pp. 6-7).

[15] Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment, p. 4.

[16] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶9 (Exhibit I, p. 2).

[17] Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment, p. 4.

[18] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶6 (Exhibit F, pp. 16-17).

Wireless stock made available to all employees of the company.[19]  The arbitrator based the amount of damages on the highest market price of the shares within a reasonable time after Wax discovered the breach of the agreements by U.S. Wireless.[20]   After the arbitration award but prior to the Petition Date, the Superior Court of California, County of San Francisco, entered a judgment confirming the award.[21]

## LEGAL DISCUSSION

### I. The Standard for Granting Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, states that a court should grant a summary judgment motion "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[22]  The burden of proving these two elements rests on the party moving for summary judgment.[23]  The fact that the Plaintiff and Wax filed cross-motions for summary judgment does not alter the Court's Rule 7056 analysis.

---

[19] *Id.*

[20] *Id.* at ¶ 6 (Exhibit F, pp. 9, 14.)

[21] *Id.* at ¶ 13 (Exhibit M, p. 1).

[22] Fed. R. Civ. P. 56(c); *see e.g., Norfolk Southern Ry. Co. v. Basell USA Inc.,* 512 F.3d 86, 91 (3d Cir. 2008); *Alcoa, Inc. v. U.S.,* 509 F.3d 173, 175 (3d Cir. 2007); and *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne,* 497 F.3d 337, 347 (3d Cir. 2007).

[23] *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA),* 479 F.3d 232, 237 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)).

> The mere fact that both parties have filed motions for summary judgment does not constitute proper grounds for a decision that no genuine issues of material fact exist, but "the court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard."[24]

The material facts of this case are not in dispute. Thus, only an issue of law remains.[25]

## II. Wax's Claim is Subject to Subordination Under Section 510(b) of the Bankruptcy Code.

In general, sections 501 through 510 of the Bankruptcy Code seek to allocate fairly the assets of the debtor's estate among the parties with claims against it.[26] Section 510 furthers this goal by altering the priority of certain claims so that certain claims are satisfied first.[27] In particular, section 510(b) requires a court to lower the priority of certain types of shareholder claims. It provides in relevant part that:

> For the purpose of distribution under this title, a claim... for damages arising from the purchase or sale of such a security... shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.[28]

---

[24] *Besso v. Cummins Intermountain, Inc.*, 885 F.Supp. 1516, 1520 (D. Wyo. 1995) (*quoting* 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure, § 2720, at 23 (1983)).

[25] *SUPERVALU, Inc. v. Board of Trustees of Sw. Pa. and W. Md. Area Teamsters and Employers Pension Fund*, 500 F.3d 334, 340 (3d Cir. 2007) ("The parties stipulated to the facts before the Arbitrator and District Court, so only a question of law remains.").

[26] 4 COLLIER ON BANKRUPTCY ¶ 510.01.

[27] *Id.*

[28] 11 U.S.C. §510(b).

The application of section 510(b) to Wax's claim presents three issues. The first question is whether the Equity Package[29] granted to Wax is a "security" as defined by section 101(49) of the Bankruptcy Code. Secondly, the Court must determine whether U.S. Wireless's grant of the Equity Package as a form of Wax's compensation is a purchase or sale of a security. Finally, the Court must determine if Wax's claim is for damages arising from a purchase or sale of a security. As all of those questions are answered in the affirmative, the Court must subordinate Wax's unsecured claim.

### A. The Equity Package granted to Wax is a "security" as defined under section 101(49) of the Bankruptcy Code.

Section 510(b) applies to "a claim… for damages arising from the purchase or sale of such a security…" and the term "security" is a defined term under the Bankruptcy Code.[30] As a portion of his compensation, Wax received an Equity Package consisting of a five percent interest in Labyrinth[31] and 100,000 U.S. Wireless stock options at an exercise price of $2.00.[32] Wax's Equity Package is a security as defined by section 101(49) of the Bankruptcy Code because both stock

---

[29] As described above, the term Equity Package consists of five percent of the shares of Labyrinth (subsequently exchanged for shares of U.S. Wireless) and 100,000 warrants of U.S. Wireless stock granted to Wax as compensation for his employment with U.S. Wireless. However, for simplicity and clarity, the Court will also include in this term all of Wax's equity interests which form the basis of the claim which the Plaintiff seeks to subordinate.

[30] 11 U.S.C. §101(49).

[31] Pursuant to the parties' amended employment agreement, Wax's five percent interest in Labyrinth was converted to U.S. Wireless common stock. Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶ 8 (Exhibit H p. 6).

[32] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶¶1, 3 and 4 (Exhibits A, C and D).

and the right to purchase a security, i.e., stock options, are included in the definition.[33]

## B. U.S. Wireless's grant of the Equity Package as a form of Wax's compensation is a purchase or sale of a security.

Section 510(b) only applies to claims for damages that arise from the purchase or sale of a security.[34]    Therefore, the question is whether U.S. Wireless's grant of the Equity Package as a form of Wax's compensation is a purchase or sale of a security.

The grant of stock or stock options as a form of compensation for employment is not technically the same as a purchase of a security in the open market.    However, courts interpreting section 510(b) have read the term "purchase" broadly and have included within its scope grants of stock and stock options as compensation.[35]    Therefore, under established law, the Equity Package Wax received as a portion of his compensation, i.e., in exchange for his labor, constitutes a purchase and sale of a security for the purpose of section 510(b) of the Bankruptcy Code.

---

[33] 11 U.S.C. §101(49)(A)(xv) ("The term 'security' includes... certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase or sell, a security..."); *see also In re Enron Corp.*, 341 B.R. 141, 151 (Bankr. S.D.N.Y. 2006) ("[T]he Court notes that stock options are specifically included within the definition of securities provided in section 101(49)(A)(xv), listed among fourteen other defined forms of securities.").

[34] 11 U.S.C. §510(b)

[35] *In re Touch Am. Holdings, Inc.*, 381 B.R. 95, 104 (Bankr. D. Del. 2008) ("If these Claimants were required to receive a portion of their compensation as options, that was a condition of employment the Claimants willingly accepted in return for their labor. These Claimants, thus, 'purchased' the stock options with their labor.") and *In re Enron Corp.*, 341 B.R. at 151 (Bankr. S.D.N.Y. 2006) ("While it is true that the Claimants did not purchase the stock options on the open market, they nonetheless exchanged value for the options: here, their labor. Such exchange falls under a broad reading of the term 'purchase.'").

### C. Wax's claim is a claim for damages arising from the purchase or sale of a security.

The Court has determined that Wax's Equity Package is a security and that U.S. Wireless's grant of the Equity Package to Wax as a form of compensation is a "purchase or sale of such a security" under section 510(b) of the Bankruptcy Code.[36]  Section 510(b) requires the Court to subordinate claims for "damages arising from the purchase or of such a security."  Therefore, the only remaining issue is whether Wax's claim is for damages "arising from the purchase or sale of such a security," or, more specifically, whether Wax's claim is for damages "[arising] from" U.S. Wireless's grant of the Equity Package to Wax.[37]  However, before the Court can address that issue, it must address the threshold question of whether the Court may subordinate Wax's claim despite the fact that his claim arose *after* the purchase or sale of the Equity Package.

### 1. The Court may subordinate Wax's claim under section 510(b) of the Bankruptcy Code despite the fact that his claim arose after the initial grant of the Equity Package.

U.S. Wireless granted Wax the Equity Package in July of 1996, but the arbitrator determined that U.S. Wireless did not breach Wax's employment agreement until June of 1999.  Therefore, the Court must decide whether Wax's

---

[36] *See, supra,* pp. 8-9.

[37] In their briefing, the parties spend a significant amount of time addressing whether or not Wax's claim is a final judgment.  In *Alta+Cast*, the issue of whether the claimant's judgment was final was not a concern, and it is not here either.  *In re Alta+Cast, LLC*, 301 B.R. 150 (Bankr. D. Del. 2003).

claim can arise from the grant of the Equity Package even if the actions which led
to that claim occurred at later date.

The scope of the phrase "arises from" in section 510(b) was an issue of first
impression for the Third Circuit in *Telegroup*.[38]  In *Telegroup*, the claimants filed
proofs of claim in the bankruptcy case seeking damages for Telegroup's alleged
breach of its agreement to use best efforts to ensure that the claimants' stock was
registered and freely tradeable.[39]  The alleged breach occurred after the actual
purchase and sale of the security.[40]  Therefore, the issue before the Third Circuit
was whether a claim can "arise from" a purchase and sale of a security for
purposes of section 510(b) when the claim does not arise until after the actual
purchase and sale of the security.[41]

For the Third Circuit, the phrase "arises from the purchase and sale of a
security" implies some sort of nexus or causal connection between the claim and
the sale of the security.[42]  However, the Third Circuit determined that the phrase
is ambiguous because it may or may not include claims which only arise after the
sale of the security.[43]  To resolve this ambiguity, the Third Circuit considered the
legislative history and policies underlying the enactment of section 510(b) and
found the phrase "arising from" not to be limited to claims that arise at the actual

---

[38] *Baroda Hill Inv., Ltd., v. Telegroup, Inc. (In re Telegroup, Inc.)*, 281 F.3d 133, 137 (3d Cir. 2002).

[39] *Id.* at 135.

[40] *Id.*

[41] *Id.* at 137.

[42] *Id.* at 138.

[43] *Id.*

sale or purchase of a security.[44] Rather, the phrase also includes claims that only arise at a later time.[45] Accordingly, under the Third Circuit's holding in *Telegroup*, the Court may subordinate Wax's claim under section 510(b) of the Bankruptcy Code despite the fact that his claim arose after the initial grant of the Equity Package.[46]

> ### 2. The Court will "look behind" Wax's state court judgment to determine whether the Court must subordinate Wax's claim under section 510(b) of the Bankruptcy Code.

Wax argues that in order for the Court to determine whether it must subordinate his claim under section 510(b) the Court need only look to the order entered by the California Superior Court, i.e., once the California Superior Court entered the judgment, it became a fixed debt obligation of U.S. Wireless and Wax is entitled to general unsecured status.[47] The Plaintiff disagrees. It argues that the Court must consider the nature of the underlying allegations Wax raised at state court when applying section 510(b), i.e., the Court must "look behind" the judgment.[48] Thus, as yet another threshold issue, the Court must determine whether or not it may "look behind" Wax's judgment to the nature of the claims leading to it.

---

[44] *Id.* at 141- 142.

[45] *Id.*

[46] On a related note, Wax never received certain portions of the Equity Package, e.g., due to the various vesting dates. This is not a bar to the subordination of Wax's entire claim under section 510(b) of the Bankruptcy Code. *See In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 829-830 (9th Cir. 2001).

[47] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, pp. 13, 17.

[48] Plaintiff's Response Brief in Opposition to Defendant's Cross-Motion for Summary Judgment, pp. 1-2.

In the context of section 510(b) subordination, two Supreme Court cases are cited for the proposition known as "looking behind" or "looking beyond" a judgment: *Brown v. Felsen* and *Archer v. Warner*.[49]  In *Brown*, Brown asserted a claim against Felsen in state court to recover money that Felsen allegedly obtain by fraud.[50]  The parties settled the case by stipulation that required Felsen to pay Brown a sum of money.[51]  The stipulation did not indicate that Brown's claim was based on Felsen's fraud.[52]  Felsen failed to make the payments to Brown and subsequently filed bankruptcy and sought to discharge Brown's claim.[53]  Brown, however, moved to have the bankruptcy court determine that his claim was a debt for money obtained by fraud.[54]  The bankruptcy court disagreed with Brown and found that the debt was based on the stipulation.[55]  The district court and Tenth Circuit affirmed this decision.[56]  The Supreme Court reversed the lower courts and held that the bankruptcy court should have looked beyond the stipulation to determine whether the debt arose from fraud.[57]

---

[49] *Brown v. Felsen*, 442 U.S. 127 (1979); and *Archer v. Warner*, 538 U.S. 314 (2003).

[50] *Brown,*  442 U.S. at 128.

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.* at 129.

[55] *Id.* at 130.

[56] *Id.*

[57] *Id.* at 138-39.

Similarly, in *Archer v. Warner*, the Archers sued the Warners alleging fraud in connection with a sale of a business.[58]  As part of a settlement between the parties, the Archers released the Warners from all fraud allegations in exchange for a promissory note and a cash payment.[59]  The Warners failed to pay on the note, the Archers sued in state court for payment, and the Warners filed for bankruptcy. [60]  The Archers filed a claim based on the note and argued that the note was non-dischargeable under section 523(a)(2)(A) of the Bankruptcy Code as a debt based on fraud.[61]  The lower courts found the debt dischargeable because the settlement replaced the original debt with a new debt, and only the original debt was based on fraud.[62]  The Supreme Court reversed the lower courts and found that the "settlement agreement and releases may have worked a kind of novation, but that fact does not bar the Archers from showing that the settlement debt arose out of 'false pretenses, a false representation, or actual fraud,' and consequently is nondischargeable."[63]  In other words, the Archers could argue that if the court looked behind the settlement agreement it would see that the claim is based on false pretenses, a false representation, or actual fraud.

---

[58] *Archer v. Warner*, 538 U.S. at 317.

[59] *Id.*

[60] *Id.* at 317-18.

[61] *Id.* at 318.

[62] *Id.*

[63] *Id.* at 323.

Citing *Brown* and *Archer*, Courts addressing section 510(b) subordination have "looked behind" judgments.[64]  In *American Wagering, Inc.*, the court stated:

> The parties agree that it is appropriate for this Panel to look behind [the claimant's] district court judgment, and to examine the underlying facts in determining whether [the claimant's] claim should be subordinated [under section 510(b)]. This accord rests on solid grounds. In construing other provisions of the bankruptcy code, the United States Supreme Court has found it appropriate to look behind the disposition (whether by judgment or settlement) of underlying prepetition proceedings between a creditor and the debtor.[65]

Furthermore, in *Alta+Cast*, without citing *Brown* or *Archer*, this Court looked behind a judgment and subordinated a claim under section 510(b).[66]  In *Alta+Cast*, the claimant and debtor were parties to an employment agreement.[67] The claimant received an equity interest in the debtor, and a clause in the employment agreement required the debtor (i.e., the employer) to repurchase the claimant's equity interest if the debtor terminated the claimant for cause.[68]  The claimant subsequently brought an action in district court asserting that the

---

[64]  *See American Wagering, Inc., v. Racusin, (In re American Wagering, Inc.)*, 326 B.R. 449, 452-53 (B.A.P. 9th Cir. 2005) *rev'd* on other grounds 465 F.3d 1048 opinion withdrawn and superseded on rehearing 493 F.3d 1067; *see also Weissmann v. Pre-Press Graphics Co., Inc. (In re Pre-Press Graphics Co., Inc.)*, 307 B.R. 65, 72-73 (N.D. Ill. 2004).

[65]  *In re American Wagering, Inc.* 326 B.R. at 452. *See also In re Pre-Press Graphics Co., Inc.*, 307 B.R. at 73 ("Given the broad definition of 'claim' and the Supreme Court's willingness to look to the substance of claims in assessing whether they are nondischargeable in bankruptcy due to fraud, the court finds that for purposes of § 510(b), [the claimant's] 'claim' should be determined according to the substance of his state court claims and not limited to the type of relief granted by the state court.").

[66]  *In re Alta+Cast, LLC*, 301 B.R. 150, 154-55 (Bankr. D. Del. 2003).

[67]  *Id*. at 152.

[68]  *Id*. at 153, n.3.

15

debtor breached the employment agreement.[69]    When the debtor filed for bankruptcy the claimant obtained relief from the automatic stay to pursue his district court action.[70]  The district court jury found in favor of the claimant and required the debtor to repurchase the claimant's equity interest.[71]  The debtor subsequently moved to subordinate the claimant's claim under both sections 510(a) and (b) of the Bankruptcy Court.[72]  The debtor argued that the court must subordinate the claimant's claim under section 510(b) because the claim was for damages stemming from the debtor's breach of the equity repurchase agreement.[73]  In response, the claimant argued that his claim did not stem from the equity repurchase agreement, but from the breach of the parties' employment agreement.[74]  The court in *Alta+Cast* examined the jury verdict and found that it was based on the debtor's failure to repurchase the claimant's equity interest.[75] Accordingly, the court subordinated the claimant's claim under section 510(b).[76]

The United States District Court for the District of Delaware recently dealt with section 510(b) subordination in *Cybersight*. [77]  In *Cybersight*, the claimant entered into an agreement with debtor in which the claimant purchased a 1.5%

---

[69] *Id.* at 152.

[70] *Id.*

[71] *Id.* at 153.

[72] *Id.*

[73] *Id.* at 154.

[74] *Id.* at 154-55.

[75] *Id.* at 155.

[76] *Id.*

[77] *Burtch v. Gannon, (In re Cybersight LLC),* 2004 WL 2713098, *1(D.Del. Nov. 17, 2004).

interest in the debtor and was appointed vice president of finance and administration, secretary and treasurer. Subsequently, the debtor terminated the claimant's employment.[78] This termination triggered a clause in the parties' agreement which required the debtor to purchase the claimant's interest in the debtor.[79] The agreement required the purchase price to equal the fair value of the interest.[80] The parties entered into arbitration to settle on a purchase price.[81] The arbitrator ruled that the debtor was obligated to pay $1,290,746.19, plus interest, to the claimant.[82] Prior to the filing of the bankruptcy, a state court entered the arbitration award as a judgment.[83] The debtor did not make any payments on the judgment.[84] The debtor then filed bankruptcy, and, claimant filed a proof of claim in the amount of the arbitration award.[85] The trustee in the case moved to subordinate this claim under section 510(b) of the Bankruptcy Code.[86] The bankruptcy court declined to subordinate the claim under section 510(b) and the District Court affirmed this decision.[87]

---

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] *Id.* at pp. *1-2.

Wax's relies heavily on *Cybersight* for the argument that the Court cannot "look behind" his judgment.[88]    However, *Cybersight* does not support this conclusion.[89]  As stated above, the claimant in *Cybersight* held an equity interest in the debtor, a dispute developed over the value of that equity interest, and the claimant obtained a prepetition judgment.[90]  The *Cybersight* claimant did not make the argument that the court could not "look behind" the claimant's state court judgment.[91]    Nevertheless, the court stated that it "evaluated [the claimant's] former equity interest and determined that it has been converted into a fixed debt obligation."[92]  Therefore, to a certain extent, the *Cybersight* court did "look behind" the claimant's state court judgment.  However, when the courts in *American Wagering, Inc.*, *Pre-Press Graphics* and *Alta+Cast* looked behind their respective judgments, the courts' focus was on the nature of the dispute leading to the judgment.  In *Cybersight*, the analysis focused on the claimant's prior equity interest, not the nature of the dispute leading to the claimant's state court judgment.[93]  To the extent *Cybersight* stands for the proposition cited by Wax,

---

[88] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, p. 8.

[89] *In re Cybersight LLC*, 2004 WL 2713098, *4, n.2 (D. Del. Nov. 17, 2004).

[90] *Id.* at pp. *1-2.

[91] *Id.* at p. *4, n.2.

[92] *Id.*

[93] *Id.*

however, the Court respectfully disagrees and follow *American Wagering, Inc.*, *Pre-Press Graphics* and *Alta+Cast*.[94]

Moreover, if courts were to apply section 510(b) without looking behind the judgment, the section would be rendered inoperative. For example, assume that Wax did not sue U.S. Wireless pre-petition, but filed a claim in bankruptcy alleging fraud or other illegality in the issuance of U.S. Wireless stock. As discussed in *Telegroup*, when Congress enacted section 510(b), it relied heavily on a law review article written by Professors Slain and Kripke.[95] In their article, Professors Slain and Kripke argued that shareholder claims alleging fraud or other illegality in connection with the issuance of stock should be subordinated to the claims of general unsecured creditors. [96] Congress's reliance on this article suggests that it "considered claims alleging fraud or other illegality in the issuance of securities to be at the core of claims that 'aris[e] from the purchase or sale of ... a security' for purposes of § 510(b)."[97] Therefore, if Wax filed a claim

---

[94] In the Third Circuit there "is no such thing as the law of the district" and, thus, the decision of a district court is not binding on a bankruptcy court. *In re Raphael*, 238 B.R. 69, 77 (D.N. J. 1999) (quoting *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371, (3d Cir. 1991)). *See also United States v. Goldberg*, 67 F.3d 1092, 1102 (3d Cir.1995) (Unpublished opinions "cannot constitute precedential authority.")

[95] *In re Telegroup, Inc.*, 281 F.3d at 139.

[96] John J. Slain and Homer Kripke, *The Interface Between Securities Regulation and Bankruptcy-Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors*, 48 N.Y.U. L.REV. 261 (1973).

[97] *Id.* at 140.

alleging fraud or other illegality in the issuance of U.S. Wireless's stock, there is no question that the Court would subordinate it under section 510(b).[98]

However, now assume Wax sued on this hypothetical claim prepetition and the claim followed the exact same tract as Wax's actual claim, i.e., arbitration, arbitration award in Wax's favor, entry of a state court judgment confirming the order, and, finally, entry of a proof of claim for the amount of the award. Under Wax's interpretation of section 510(b), this Court could not subordinate this hypothetical claim. Thus, this reading leads to a situation where, based solely on the timing of events rather than the substance of the claim, a court cannot subordinate the very type of claim Congress intended to subordinate when it enacted section 510(b).[99]

Accordingly, the Court will "look behind" Wax's state court judgment and examine the nature of the proceedings leading to that judgment in order to determine whether this Court must subordinate Wax's claim under section 510(b) of the Bankruptcy Code.

### 3. For purposes of section 510(b) of the Bankruptcy Code, there is a material difference between claims based on fixed debt obligations and claims based on a judgment.

Wax also argues that, for purposes of section 510(b) of the Bankruptcy Code, the Court must treat his judgment as it would treat a claim based on a

---

[98] *Id.* ("[C]laims alleging illegality in the issuance of securities fall squarely within the intended scope of § 510(b)…").

[99] *Id.*

fixed debt obligation.[100]  Courts traditionally have not subjected claims based on

a fixed debt obligation to section 510(b) subordination.[101]  For example, in

*Montgomery Ward Holding Corp.*,[102] the debtor exercised its rights under a

stockholders' agreement to purchase Montgomery Ward stock from the claimant

in exchange for cash and a promissory note.[103]  The debtor agreed to repay the

promissory in installments.[104]  However, the debtor filed for bankruptcy before it

paid any of the installments.[105]  These unpaid installments formed the basis of

the claimant's proof of claim, which the Debtor then moved to subordinate under

section 510(b).[106]

The *Montgomery Ward* court framed the issue before it in this way: "[t]he

critical inquiry here is whether a claim based solely on the nonpayment of a

promissory note issued by a debtor to consummate the repurchase of its own

---

[100] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, p. 15.

[101] *Official Comm. of Unsecured Creditors v. American Capital Fin. Servs., Inc. (In re Mobile Tool Intern. Inc.)*, 306 B.R. 778, 782 (Bankr. D. Del. 2004) ("Thus, the Third Circuit did not alter the long-standing principle that section 510(b) does not apply to instances when separate debt notes are actually issued in exchange for the stock.").

[102] The Court in *Montgomery Ward Holding Corp.* limited section 510(b) subordination to claims which directly concern the stock transaction itself.  *See Montgomery Ward Holding Corp., v. Schoeberl (In re Montgomery Ward Holding Corp.)*, 272 B.R. 836, 842 (Bankr. D. Del. 2001).  That view has since been overruled in the Third Circuit.  *See In re Telegroup, Inc.*, 281 F.3d at 142.  However, *Montgomery Ward Holding Corp.* is still good law for the proposition that section 510(b) subordination is not proper when the claim is based on a fixed debt obligation.  *See In re Mobile Tool Intern., Inc.* 306 B.R. at 780 ("Claims based on a debtor's note are not subject to section 510(b) subordination because such claims are only for the recovery of an unpaid debt.").

[103] *In re Montgomery Ward Holding Corp.*, 272 B.R. at 839.

[104] *Id.*

[105] *Id.*

[106] *Id.* at 839-40.

stock is one for damages 'arising from' the purchase or sale of its securities."[107] The debtor argued that the claimant's status as a former shareholder somehow differentiated the claimant from other noteholders and general unsecured creditors.[108]  The Court was "not persuaded that the Note's origin as payment for stock is relevant under § 510(b)." [109]

Likewise, in *Mobile Tool International*, the claimants exchanged their equity interests for a separate debt instrument pre-petition.[110]  The Bankruptcy Court did not subordinate the claimants' claim because, in the Court's opinion, "[w]hen the [claimants] received the promissory notes, they removed the variable nature of their investment and placed themselves in the position of general creditors. Their claims are not the type which section 510(b) mandates be subordinated."[111]

Wax attempts to draw an analogy between himself and the claimants in *Mobile Tool International*.[112]  To support this argument, he again relies heavily on *Cybersight*.  In *Cybersight*, the court states that "there is no material difference between the exchange of a promissory note for equity interests, which has been held not to be subject to Section 510(b) and the judgment [the claimant] received in this case."[113]  The *Cybersight* court further stated that, "[i]n both instances, the

---

[107] *Id.* at 841.

[108] *Id.* at 845.

[109] *Id.*

[110] *In re Mobile Tool Intern. Inc.*, 306 B.R. at 779.

[111] *Id.* at 782.

[112] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, p. 15.

[113] *In re Cybersight LLC*, 2004 WL 2713098, *4 (D. Del. Nov. 17, 2004) (internal citations omitted).

claimants [in both *Mobile Tool International* and *Cybersight*], pre-petition, were no longer able to participate in the benefits and risks associated with being equity holders of the debtors, and therefore, Section 510(b) did not require subordination."[114] Therefore, according to Wax, this Court should treat his claim as it would treat a claimant who exchanges his or her equity interest for a promissory note.

A comparison of *Alta+Cast* to *Mobile Tool International* demonstrates, however, that claims based on a fixed debt instrument are treated differently from claims based on a judgment debt. In both *Alta+Cast* and *Mobile Tool International,* the debtor agreed pre-petition to repurchase the claimant's equity interest.[115] In *Mobile Tool International,* the debtor issued notes to the claimant when the debtor repurchased the claimant's equity interest.[116] In *Alta+Cast,* however, the claimant sued the debtor for breach of the parties' employment agreement and the district court jury concluded in a special verdict that the claimant "was terminated by the Debtor... for just cause or failure to perform, [and] pursuant to the terms of the Employment Agreement... the Debtor was obligated to repurchase [the claimant's] ownership interest... [for] $2,260,000

---

[114] *Id.*

[115] *In re Mobile Tool Intern., Inc.,* 306 B.R. at 779 ("[T]he Individual Defendants and the Debtors entered into a Stockholder Agreement wherein the Debtors agreed, upon notice, to repurchase the Class B Common Stock in the Debtors' company which had been purchased by the Individual Defendants."); *In re Alta-Cast, LLC,* 301 B.R. at 153 n.3 ("Section 10(b) of the Employment Agreement provided that if Hays' employment were terminated for cause, the Debtor would repurchase Hays' membership interest in the Debtor.").

[116] *In re Mobile Tool Intern., Inc.,* 306 B.R. at 779.

plus interest from the date of termination."[117]    In *Alta+Cast*, the Court subordinated the claimant's claim under section 510(b).[118]  However, in *Mobile Tool International* the Court did not.[119]  Chief Judge Walrath decided both cases and in *Mobile Tool International* she stated:

> Once again, the facts in *Alta+Cast* are distinguishable from this case because no separate debt instrument was issued and the claimant did not change his status from owner to creditor.

> The fundamental concept in the cases cited by the Plaintiffs [which included *Alta+Cast*] is that the nexus or causal connection required to employ section 510(b) exists where stock is retained by the claimant. When the stock is exchanged and a separate debt instrument is issued by the debtor, however, the claimant is converted from an owner of stock to a creditor. Such is the case here.[120]

Wax argues that there is no basis for this distinction between claims based on a fixed debt obligation and claims based on a money judgment.[121]  However, section 101(5) of the Bankruptcy Code defines "claim" in relevant part as a "right to payment whether or not such right is reduced to judgment... ."[122]  *This indicates that a claim exists before a judgment is entered.*[123]  Therefore, Wax's claim is not simply a fixed debt obligations arising from the state court judgment. Rather is the claim he asserted against U.S. Wireless at state court and upon which the

---

[117] *In re Alta+Cast, LLC*, 301 B.R. at 152-53.

[118] *Id.* at 155.

[119] *In re Mobile Tool Intern., Inc.*, 306 B.R. at 782.

[120] *Id.* at 781.

[121] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, p. 15.

[122] 11 U.S.C. §101(5).

[123] *See In re Pre-Press Graphics Co., Inc.*, 307 B.R. at 71.

arbitrator based Wax's recovery. Under section 101(5) of the Bankruptcy Code, Wax's claim is not altered by the state court judgment. Conversely, when a claimant exchanges his or her equity interest for a fixed debt obligation the equitable nature of the claim is extinguished.[124] The Court will continue to follow this distinction between claims based on a fixed debt obligation and claims based on a judgment arising from an equity interest.

Wax also cites to *American Wagering, Inc.* to support the proposition that his claim is properly treated as a claim based on a separate debt instrument.[125] In *American Wagering, Inc.*, the debtor hired the claimant as a financial advisor in connection with the debtor's IPO.[126] The terms of the agreement between the parties called for the claimant's compensation "to be *valued* on the basis of the debtors' share price upon completion of the IPO, the contract did not provide for that compensation in the form of shares."[127] The debtor sued the claimant in district court over the employment agreement and the claimant filed a counterclaim.[128] The district court found for the claimant and awarded the claimant damages of $2,310,000.[129] The debtor subsequently filed bankruptcy,

---

[124] *In re Mobile Tool Intern., Inc.* 306 B.R. at 781; and *The Consolidated FGH Liquidating Trust v. Marler (In re The Consolidated FGH Liquidating Trust)*, 2007 WL 2955952, *4 (S.D. Miss. Oct. 2, 2007).

[125] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, pp.15-16.

[126] *Racusin v. American Wagering, Inc., (In re American Wagering, Inc.)*, 493 F.3d 1067, 1069 (9th Cir. 2007).

[127] *Id.* at 1072 (emphasis in original).

[128] *Id.* at 1070.

[129] *Id.*

the claimant filed a claim based on the district court judgment, and the debtor

sought to subordinate under section 510(b).[130]

The Ninth Circuit declined to subordinate the claim.[131]  The Ninth Circuit

reasoned that 510(b) did not apply because the claimant *never agreed, intended, or*

*ever became an equity holder;* his compensation was simply *valued* by the share

price.[132] Wax cites to *American Wagering , Inc.* as case, analogous to his, in which

the court decided not to subordinate a claim under section 510(b).[133]  However,

Wax misreads one critical fact in *American Wagering*.  Wax states that the claimant

in *American Wagering* stood to receive, "4.5% of the company's valuation upon an

initial public offering, *all but $150,000 of which was to be paid in the debtor's common*

*stock.*"[134] This is simply an incorrect reading of the case.  Unlike Wax, the

claimant in *American Wagering* did not contract to become an equity holder.[135]

Therefore, *American Wagering, Inc.,* is not analogous to Wax's case and does not

---

[130] *Id.*

[131] *Id.* at 1069.

[132] *Id.* at 1073 (emphasis added).

[133] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, pp. 15-16.

[134] Id. at p. 16 (emphasis added).

[135] *In re American Wagering, Inc.* 493 F.3d at 1071 ("The original …contract, which promised [the claimant] 4% of the final evaluation' of the IPO, only gave him the monetary value of the shares of stock, not the stock itself. [The debtor] never upheld its end of the contract, resulting in a lawsuit for breach seeking damages based on the value of the stock. [The claimant] received that money judgment and initiated legal action to receive it long before the bankruptcy proceeding at issue here commenced. [The claimant] thus sought all along what was promised by the contract-the monetary value of the stock, rather than the stock itself-and the district court, after some direction from this Court, effectuated the contractual remedy as well. Accordingly, his claim in the bankruptcy proceeding is more akin to that of a creditor than an investor and subordinating his claim as "arising from the purchase or sale" of stock would not serve the underlying purposes of subordination under section 510(b).").

support the proposition that a court should treat claims based on a judgment in the same way as claims based on a separate debt instrument.

### 4. Section 510(b) Subordination Analysis of Wax's Claim

Having addressed whether the Court may "look behind" Wax's state court judgment, the Court now turns to the actual analysis, which is easily performed. In the complaint filed by Wax against U.S. Wireless in the Superior Court of California, Wax alleged breach of contract and breach of the implied covenant of good faith and fair dealing.[136] In his breach of contract claim, Wax alleged that as a direct and proximate cause of U.S. Wireless's breach of the employment agreement between the parties Wax suffered damages "including but not limited to the loss of wages and benefits, including his rights pursuant to the stock option agreement, the restricted stock agreement and the private placement opportunity for [U.S. Wireless] employees."[137] In Wax's claim for breach of the implied covenant of good faith and fair dealing, Wax alleged that U.S. Wireless "terminated his employment… in whole or in part to prevent the vesting of options for shares of [U.S. Wireless] stock, to prevent the removal of restrictions on restricted [U.S. Wireless] stock, and to deprive [Wax] of his

---

[136] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶9 (Exhibit I, ¶¶ 12-20).

[137] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶9 (Exhibit I, ¶ 15).

opportunity to participate... in the Spring 1999 private placement of [U.S. Wireless] stock."[138]

Wax further alleged that these actions violated the implied covenant of good faith and fair dealing and, as a result, Wax suffered the following damages: "lost wages... [lost] value of the options and restricted stock which would have vested... plus the spread between the purchase price of the stock offered in the Spring 1999 private placement and the market price of such stock... ."[139] Wax alleged that the damages for each cause of action exceeded $750,000.[140]

Turning to the arbitrator's award, we see that the arbitrator found that U.S. Wireless breached the employment agreement between U.S. Wireless and Wax.[141] This finding required the arbitrator to determine the value of the stock and various other equity interests Wax would have received if U.S. Wireless had not breached the employment agreement. The damages Wax received were based on this determination.

Furthermore, Wax fails to argue why the damages awarded to him do not arise from the purchase and sale of a security. As stated above, Wax simply

---

[138] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶9 (Exhibit I, ¶ 18).

[139] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶9 (Exhibit I, ¶¶ 19-20).

[140] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶9 (Exhibit I, pp. 6-7).

[141] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶6 (Exhibit F, p. 1).

argues that because his arbitration award was reduced to judgment the Court is precluded from considering the nature of his state court claims.

Based on the claims asserted by Wax at state court and upon which the arbitrator based Wax's recovery, it is clear that Wax's claim is for damages arising from the purchase or sale of the Equity Package. Accordingly, the Court is required to subordinate Wax's claim, except for the unsecured wage claim in the amount of $26,330.00, under section 510(b) of the Bankruptcy Code.

## CONCLUSION

For the foregoing reasons, the Court grants the Plaintiff's motion for summary judgment and denies the Defendant's motion for summary judgment. An order will be issued.

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| U.S. WIRELESS LOCATION ) | Case No. 01-10262 (CSS) |
| TECHNOLOGIES, INC. AND WIRELESS ) | (Jointly Administered) |
| LOCATION SERVICES, INC., ) | |
| ) | |
| Debtors. ) | |
| ) | |
| THE LIQUIDATING TRUST OF U.S. ) | |
| WIRELESS LOCATION TECHNOLOGIES, ) | |
| INC. AND WIRELESS LOCATION ) | |
| SERVICES, INC., ) | Adv. Proc. No. 07-51413 (CSS) |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MATI WAX, ) | |
| ) | |
| Defendant. ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, Curtis A. Hehn, hereby certify that on the 16th day of April, 2008, I caused a

copy of the following document(s) to be served on the individuals on the attached service list(s)

in the manner indicated:

### NOTICE OF APPEAL

Curtis A. Hehn (Bar No. 4264)

U.S. Wireless Location Technologies, Inc.
(The Liquidating Trust of U.S. Wireless Location, et al.
v. Mati Wax); Adv. No. 07-51413 Service List
Document No. 136666
04 – Hand Delivery

*Hand Delivery*
The Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE  19899

*Hand Delivery*
Richard M. Beck, Esquire
Klehr, Harrison, Harvey,
Branzburg & Ellers LLP
919 Market Street, Suite 1000
Wilmington, DE  19801

*Hand Delivery*
Christopher A. Ward, Esquire
Klehr, Harrison, Harvey,
Branzburg & Ellers LLP
919 Market Street, Suite 1000
Wilmington, DE  19801

*Hand Delivery*
Mark S. Kenney, Esquire
Office of the U.S. Trustee
844 King Street
Suite 2207, Lockbox 35
Wilmington, DE 19801

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

**APPEAL TRANSMITTAL SHEET**

Case Number: _07-51413_____  ○ BK   ◉ AP
      If AP, related BK Case Number: _01-10262_____

Order Appealed: _Opinion and Order denying Defendant's Motion for Summary Judgment___
      Docket Number: _26, 27_____     Date Filed: _4/9/08_____

Item Transmitted:   ◉ Notice of Appeal       ○ Motion for Leave to Appeal
      Docket Number: _28_____     Date Filed: _4/16/08_____

*Appellant: _Mati Wax_____     *Appellee: _The Liquidating Trust of US Wireless■

Counsel for Appellant:                    Counsel for Appellee:
_Curtis A. Hehn, Esq._____ ■    _Christopher A. Ward, Esq._____
_Pachulski Stang Ziehl & Jones LLP_ ■    _Polsinelli Shalton Flanigan Suelthaus_
_919 N. Market Street_____ ■    _1000 N. Market Street_____
_17th Floor_____ ■    _Suite 1205_____
_Wilmington, DE 19801_____     _Wilmington, DE 19801_____

*If additional room is needed, please attach a separate sheet.

Filing Fee paid?  ◉ Yes  ○ No

IFP Motion Filed by Appellant?  ○ Yes  ◉ No

Hard Copies of Designated Items Received?  ○ Yes  ◉ No

Have Additional Appeals to the Same Order been Filed?  ○ Yes  ◉ No
      If so, has District Court assigned a Civil Action Number?  ○ Yes  ○ No   Civil Action # _____

_5/13/08_____     By: _/s/ Sandra Jackson_____
Date                                    Deputy Clerk

FOR USE BY U.S. BANKRUPTCY COURT

Bankruptcy Court Appeal Number: _08-24_____
6/1/06

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| U.S. WIRELESS CORPORATION, INC., | ) Case No. 01-10262 |
| WIRELESS LOCATION | ) through 01-10264 (CSS) |
| TECHNOLOGIES, INC., AND WIRELESS | ) |
| LOCATION SERVICES, INC., | ) |
| | ) |
|     Debtors. | ) |
| _____ | ) |
| THE LIQUIDATING TRUST OF U.S. | ) |
| WIRELESS COPRORATION, INC., | ) |
| WIRELESS LOCATION | ) |
| TECHNOLOGIES, INC., AND WIRELESS | ) |
| LOCATION SERVICES, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No.07-51413(CSS) |
| | ) |
| MATI WAX, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

For the reasons set forth in the Court's opinion of this date the Court

grants the Plaintiff's motion for summary judgment and denies the Defendant's

motion for summary judgment.

_____
Christopher S. Sontchi
United States Bankruptcy Judge

Dated:  April 9, 2008

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| U.S. WIRELESS CORPORATION, INC., | ) Case No. 01-10262 |
| WIRELESS LOCATION | ) through 01-10264 (CSS) |
| TECHNOLOGIES, INC., AND WIRELESS | ) |
| LOCATION SERVICES, INC., | ) |
| | ) |
| Debtors. | ) |
| _____ | ) |
| THE LIQUIDATING TRUST OF U.S. | ) |
| WIRELESS COPRORATION, INC., | ) |
| WIRELESS LOCATION | ) |
| TECHNOLOGIES, INC., AND WIRELESS | ) |
| LOCATION SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No.07-51413(CSS) |
| | ) |
| MATI WAX, | ) |
| | ) |
| Defendant. | ) |

### OPINION[1]

KLEHR, HARRISON, HARVEY
BRANZBURG & ELLERS LLP
Richard M. Beck
Christopher A. Ward
919 Market Street, Suite 1000
Wilmington, DE 19801

**Counsel for Plaintiff, The**
**Liquidating Trust of U.S.**
**Wireless Corporation, Inc.,**
**Wireless Location Technologies,**
**Inc., and Wireless Location**
**Services, Inc.**

LEVINE & BAKER LLP
Richard E. Levine
One Maritime Plaza, Suite 400
San Francisco, CA 94111

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones
Kenneth H. Brown
Curtis A. Hehn
P.O. Box 8705
Wilmington, DE 19899-8705

**Counsel for Defendant, Mati Wax**

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

Dated: April 9, 2008

Sontchi, J. _Clfch Shtl_____

## INTRODUCTION

Before the Court is an action to subordinate a claim brought by Mati Wax, a former employee of the Debtors.  The Liquidating Trust initiated this adversary proceeding because it believes that a portion of Mr. Wax's claim is for damages arising from the purchase and sale of a security and, thus, must be subordinated under section 510(b) of the Bankruptcy Code.  For the reasons set forth below, the Court agrees with The Liquidating Trust and grants summary judgment in its favor.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K) and (O).

## STATEMENT OF FACTS

**I.  Procedural Background**

On August 29, 2001 ("Petition Date"), U.S. Wireless Company ("U.S. Wireless") and two of its affiliates (collectively, the "Debtors") filed voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code.[2]   Under the confirmed plan in these cases, the assets and liabilities of the Debtors were consolidated and transferred to The Liquidating Trust of U.S. Wireless Corporation, Inc., Wireless Location Technologies, Inc., and Wireless Location Services, Inc. ("The Liquidating Trust" or "Plaintiff").[3]   Executive Sounding Board Associates Inc. was appointed as Liquidating Agent ("Liquidating Agent") for The Liquidating Trust and given the power to object to, liquidate, classify and satisfy all claims against the Debtors' estates and to prosecute all causes of action on behalf of the Debtors' estates.[4]

This adversary proceeding was commenced when the Liquidating Agent filed an Adversary Complaint ("Complaint") on behalf of the Plaintiff in May, 2007.[5]   Through the Complaint, the Plaintiff seeks to subordinate under section 510(b) of the Bankruptcy Code the unsecured claim of Mati Wax ("Wax" or "Defendant") in the amount of approximately $2.7 million.[6]

In response to the Complaint, Wax filed an Answer.[7]   The Plaintiff and the Defendant subsequently agreed to and filed a Stipulation of Facts By and

---

[2] Adversary Complaint, ¶ 6.

[3] *Id*. at ¶ 10.

[4] *Id*. at ¶ 11.

[5] [Docket Entry 1].

[6] Complaint, ¶ 29 ("[T]he Liquidating Trust has brought this action to subordinate Wax's claims relating [to the] Securities Award in the aggregate amount of $2,749,082.26 to all other general unsecured creditors pursuant to Section 510(b) of the Bankruptcy Code.").

[7] [Docket Entry 6].  The Defendant raised various affirmative defenses in the Answer that this Court need not address in this Opinion.

Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax ("Stipulation").[8]  Shortly thereafter, the parties filed cross-motions for summary judgment.[9]  Briefing was completed in December, 2007, and the Court heard oral argument on the parties' cross-motions for summary judgment in January, 2008. This matter is now ripe for decision.

## II.  General Background

On July 17, 1996, Mati Wax accepted the position of Chief Technology Officer of Labyrinth Communications Inc. ("Labyrinth"), a subsidiary of U.S. Wireless.[10]  According to the letter agreement between Wax and Labyrinth, Wax was to receive a salary of $100,000 per year and an equity package ("Equity Package") consisting of five percent of the shares of Labyrinth (50,000 shares) and 100,000 warrants of U.S. Wireless at $2.00.[11]  Wax also entered into an employment agreement with Labyrinth, an option agreement with U.S. Wireless, and a restricted stock agreement with Labyrinth.[12]  These agreements elaborated on and further memorialized the initial letter agreement between Wax and Labyrinth.  On January 12, 1998, Wax's employment agreement was amended to reflect the merger of Labyrinth together with and into U.S. Wireless.[13]  As part of

---

[8] [Docket Entry 10].

[9] [Docket Entries 14 and 18].

[10] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶1 (Exhibit A, p. 1).

[11] *Id*.

[12] *Id*. at ¶¶ 2, 3 and 4 (Exhibits B, C and D).

[13] *Id*. at ¶ 8 (Exhibit H, p. 1).

the amendment, Wax received U.S. Wireless common stock in exchange for his

Labyrinth stock.[14]

In 1999, a dispute arose between U.S. Wireless and Wax concerning Wax's

employment, and, as a result, U.S. Wireless terminated Wax's employment on or

about June 10, 1999.[15]  In connection with his termination, Wax filed a complaint

for breach of contract and breach of the implied covenant of good faith and fair

dealing against U.S. Wireless in the Superior Court of California in and for the

County of Contra Costa.[16]  The parties agreed to transfer the dispute to the

American Arbitration Association ("AAA Proceeding").[17]  At the conclusion of

the AAA Proceeding, the arbitrator awarded Wax $2,775,416.26 of which

$26,333.00 was attributable to actual wages and expenses owed to Wax under his

employment agreement.[18]  The arbitrator based the remaining $2,749,082.26 of

damages on: (1) the loss of 91,707 unvested restricted shares lost by Wax as a

result of his termination; (2) 33,333 unvested stock options lost by Wax as a result

of his termination; (3) U.S. Wireless's failure to remove the transfer restrictions

pursuant to SEC Rule 144 on restricted shares owned by Wax; and (4) Wax's

claim regarding U.S. Wireless's failure to include him in a private offering of U.S.

---

[14] *Id*. at ¶ 8 (Exhibit H, pp. 6-7).

[15] Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment, p. 4.

[16] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶9 (Exhibit I, p. 2).

[17] Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment, p. 4.

[18] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶6 (Exhibit F, pp. 16-17).

Wireless stock made available to all employees of the company.[19]  The arbitrator based the amount of damages on the highest market price of the shares within a reasonable time after Wax discovered the breach of the agreements by U.S. Wireless.[20]   After the arbitration award but prior to the Petition Date, the Superior Court of California, County of San Francisco, entered a judgment confirming the award.[21]

## LEGAL DISCUSSION

### I.  The Standard for Granting Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, states that a court should grant a summary judgment motion "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[22]   The burden of proving these two elements rests on the party moving for summary judgment.[23]   The fact that the Plaintiff and Wax filed cross-motions for summary judgment does not alter the Court's Rule 7056 analysis.

---

[19] *Id.*

[20] *Id.* at ¶ 6 (Exhibit F, pp. 9, 14.)

[21] *Id.* at ¶ 13 (Exhibit M, p. 1).

[22] Fed. R. Civ. P. 56(c);  *see e.g.,  Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008);  *Alcoa, Inc. v. U.S.,*  509 F.3d 173, 175 (3d Cir. 2007); and *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne,*  497 F.3d 337, 347 (3d Cir. 2007).

[23] *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 237 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)).

> The mere fact that both parties have filed motions for summary judgment does not constitute proper grounds for a decision that no genuine issues of material fact exist, but "the court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard."[24]

The material facts of this case are not in dispute. Thus, only an issue of law remains.[25]

## II. Wax's Claim is Subject to Subordination Under Section 510(b) of the Bankruptcy Code.

In general, sections 501 through 510 of the Bankruptcy Code seek to allocate fairly the assets of the debtor's estate among the parties with claims against it.[26] Section 510 furthers this goal by altering the priority of certain claims so that certain claims are satisfied first.[27] In particular, section 510(b) requires a court to lower the priority of certain types of shareholder claims. It provides in relevant part that:

> For the purpose of distribution under this title, a claim… for damages arising from the purchase or sale of such a security… shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.[28]

---

[24] *Besso v. Cummins Intermountain, Inc.*, 885 F.Supp. 1516, 1520 (D. Wyo. 1995) (*quoting* 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure, § 2720, at 23 (1983)).

[25] *SUPERVALU, Inc. v. Board of Trustees of Sw. Pa. and W. Md. Area Teamsters and Employers Pension Fund*, 500 F.3d 334, 340 (3d Cir. 2007) ("The parties stipulated to the facts before the Arbitrator and District Court, so only a question of law remains.").

[26] 4 COLLIER ON BANKRUPTCY ¶ 510.01.

[27] *Id.*

[28] 11 U.S.C. §510(b).

7

The application of section 510(b) to Wax's claim presents three issues.  The first question is whether the Equity Package[29] granted to Wax is a "security" as defined by section 101(49) of the Bankruptcy Code.  Secondly, the Court must determine whether U.S. Wireless's grant of the Equity Package as a form of Wax's compensation is a purchase or sale of a security.  Finally, the Court must determine if Wax's claim is for damages arising from a purchase or sale of a security.  As all of those questions are answered in the affirmative, the Court must subordinate Wax's unsecured claim.

### A. The Equity Package granted to Wax is a "security" as defined under section 101(49) of the Bankruptcy Code.

Section 510(b) applies to "a claim… for damages arising from the purchase or sale of such a security…" and the term "security" is a defined term under the Bankruptcy Code.[30]  As a portion of his compensation, Wax received an Equity Package consisting of a five percent interest in Labyrinth[31] and 100,000 U.S. Wireless stock options at an exercise price of $2.00.[32]  Wax's Equity Package is a security as defined by section 101(49) of the Bankruptcy Code because both stock

---

[29] As described above, the term Equity Package consists of five percent of the shares of Labyrinth (subsequently exchanged for shares of U.S. Wireless) and 100,000 warrants of U.S. Wireless stock granted to Wax as compensation for his employment with U.S. Wireless.  However, for simplicity and clarity, the Court will also include in this term all of Wax's equity interests which form the basis for the portion of the claim which the Plaintiff seeks to subordinate.

[30] 11 U.S.C. §101(49).

[31] Pursuant to the parties' amended employment agreement, Wax's five percent interest in Labyrinth was converted to U.S. Wireless common stock.  Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶ 8 (Exhibit H p. 6).

[32] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶¶1, 3 and 4 (Exhibits A, C and D).

and the right to purchase a security, i.e., stock options, are included in the definition.[33]

### B. U.S. Wireless's grant of the Equity Package as a form of Wax's compensation is a purchase or sale of a security.

Section 510(b) only applies to claims for damages that arise from the purchase or sale of a security.[34]  Therefore, the question is whether U.S. Wireless's grant of the Equity Package as a form of Wax's compensation is a purchase or sale of a security.

The grant of stock or stock options as a form of compensation for employment is not technically the same as a purchase of a security in the open market.  However, courts interpreting section 510(b) have read the term "purchase" broadly and have included within its scope grants of stock and stock options as compensation.[35]  Therefore, under established law, the Equity Package Wax received as a portion of his compensation, i.e., in exchange for his labor, constitutes a purchase and sale of a security for the purpose of section 510(b) of the Bankruptcy Code.

---

[33] 11 U.S.C. §101(49)(A)(xv) ("The term 'security' includes… certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase or sell, a security…"); *see also In re Enron Corp.,* 341 B.R. 141, 151 (Bankr. S.D.N.Y. 2006) ("[T]he Court notes that stock options are specifically included within the definition of securities provided in section 101(49)(A)(xv), listed among fourteen other defined forms of securities.").

[34] 11 U.S.C. §510(b)

[35] *In re Touch Am. Holdings, Inc.,* 381 B.R. 95, 104 (Bankr. D. Del. 2008) ("If these Claimants were required to receive a portion of their compensation as options, that was a condition of employment the Claimants willingly accepted in return for their labor. These Claimants, thus, 'purchased' the stock options with their labor.") and *In re Enron Corp.,* 341 B.R. at 151 (Bankr. S.D.N.Y. 2006) ("While it is true that the Claimants did not purchase the stock options on the open market, they nonetheless exchanged value for the options: here, their labor. Such exchange falls under a broad reading of the term 'purchase.'").

### C.  Wax's claim is a claim for damages arising from the purchase or sale of a security.

The Court has determined that Wax's Equity Package is a security and that U.S. Wireless's grant of the Equity Package to Wax as a form of compensation is a "purchase or sale of such a security" under section 510(b) of the Bankruptcy Code.[36]  Section 510(b) requires the Court to subordinate claims for "damages arising from the purchase or of such a security."  Therefore, the only remaining issue is whether Wax's claim is for damages "arising from the purchase or sale of such a security," or, more specifically, whether Wax's claim is for damages "[arising] from" U.S. Wireless's grant of the Equity Package to Wax.[37]  However, before the Court can address that issue, it must address the threshold question of whether the Court may subordinate Wax's claim despite the fact that his claim arose *after* the purchase or sale of the Equity Package.

### 1.  The Court may subordinate Wax's claim under section 510(b) of the Bankruptcy Code despite the fact that his claim arose after the initial grant of the Equity Package.

U.S. Wireless granted Wax the Equity Package in July of 1996, but the arbitrator determined that U.S. Wireless did not breach Wax's employment agreement until June of 1999.  Therefore, the Court must decide whether Wax's

---

[36] *See*, *supra*, pp. 8-9.

[37] In their briefing, the parties spend a significant amount of time addressing whether or not Wax's claim is a final judgment.  In *Alta+Cast*, the issue of whether the claimant's judgment was final was not a concern, and it is not here either.  *In re Alta+Cast, LLC*, 301 B.R. 150 (Bankr. D. Del. 2003).

claim can arise from the grant of the Equity Package even if the actions which led to that claim occurred at later date.

The scope of the phrase "arises from" in section 510(b) was an issue of first impression for the Third Circuit in *Telegroup*.[38]  In *Telegroup*, the claimants filed proofs of claim in the bankruptcy case seeking damages for Telegroup's alleged breach of its agreement to use best efforts to ensure that the claimants' stock was registered and freely tradeable.[39]  The alleged breach occurred after the actual purchase and sale of the security.[40]  Therefore, the issue before the Third Circuit was whether a claim can "arise from" a purchase and sale of a security for purposes of section 510(b) when the claim does not arise until after the actual purchase and sale of the security.[41]

For the Third Circuit, the phrase "arises from the purchase and sale of a security" implies some sort of nexus or causal connection between the claim and the sale of the security.[42]  However, the Third Circuit determined that the phrase is ambiguous because it may or may not include claims which only arise after the sale of the security.[43]  To resolve this ambiguity, the Third Circuit considered the legislative history and policies underlying the enactment of section 510(b) and found the phrase "arising from" not to be limited to claims that arise at the actual

---

[38] *Baroda Hill Inv., Ltd., v. Telegroup, Inc.* (*In re Telegroup, Inc.*), 281 F.3d 133, 137 (3d Cir. 2002).

[39] *Id.* at 135.

[40] *Id.*

[41] *Id.* at 137.

[42] *Id.* at 138.

[43] *Id.*

sale or purchase of a security.[44]  Rather, the phrase also includes claims that only

arise at a later time.[45]  Accordingly, under the Third Circuit's holding in

*Telegroup*, the Court may subordinate Wax's claim under section 510(b) of the

Bankruptcy Code despite the fact that his claim arose after the initial grant of the

Equity Package.[46]

> ### 2. The Court will "look behind" Wax's state court judgment to determine whether the Court must subordinate Wax's claim under section 510(b) of the Bankruptcy Code.

Wax argues that in order for the Court to determine whether it must

subordinate his claim under section 510(b) the Court need only look to the order

entered by the California Superior Court, i.e., once the California Superior Court

entered the judgment, it became a fixed debt obligation of U.S. Wireless and Wax

is entitled to general unsecured status.[47]  The Plaintiff disagrees.  It argues that

the Court must consider the nature of the underlying allegations Wax raised at

state court when applying section 510(b), i.e., the Court must "look behind" the

judgment.[48]  Thus, as yet another threshold issue, the Court must determine

whether or not it may "look behind" Wax's judgment to the nature of the claims

leading to it.

---

[44] *Id*. at 141- 142.

[45] *Id*.

[46] On a related note, Wax never received certain portions of the Equity Package, e.g., due to the various vesting dates.  This is not a bar to the subordination of Wax's entire claim under section 510(b) of the Bankruptcy Code.  *See In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 829-830 (9th Cir. 2001).

[47] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, pp. 13, 17.

[48] Plaintiff's Response Brief in Opposition to Defendant's Cross-Motion for Summary Judgment, pp. 1-2.

In the context of section 510(b) subordination, two Supreme Court cases are cited for the proposition known as "looking behind" or "looking beyond" a judgment: *Brown v. Felsen* and *Archer v. Warner*.[49]  In *Brown*, Brown asserted a claim against Felsen in state court to recover money that Felsen allegedly obtain by fraud.[50]  The parties settled the case by stipulation that required Felsen to pay Brown a sum of money.  The stipulation did not indicate that Brown's claim was based on Felsen's fraud.  Felsen failed to make the payments to Brown and subsequently filed bankruptcy and sought to discharge Brown's claim.  Brown, however, moved to have the bankruptcy court determine that his claim was a debt for money obtained by fraud.  The bankruptcy court disagreed with Brown and found that the debt was based on the stipulation.  The district court and Tenth Circuit affirmed this decision.  The Supreme Court reversed the lower courts and held that the bankruptcy court should have looked beyond the stipulation to determine whether the debt arose from fraud.[51]

Similarly, in *Archer v. Warner*, the Archers sued the Warners alleging fraud in connection with a sale of a business.[52]  As part of a settlement between the parties, the Archers released the Warners from all fraud allegations in exchange for a promissory note and a cash payment.  The Warners failed to pay on the note, the Archers sued in state court for payment, and the Warners filed for

---

[49] *Brown v. Felsen*, 442 U.S. 127 (1979); and *Archer v. Warner*, 538 U.S. 314 (2003).

[50] *Brown*, 442 U.S. at 128.

[51] *Id*. at 138-39.

[52] *Archer v. Warner*, 538 U.S. at 317.

bankruptcy.  The Archers filed a claim based on the note and argued that the note was non-dischargeable under section 523(a)(2)(A) of the Bankruptcy Code as a debt based on fraud.  The lower courts found the debt dischargeable because the settlement replaced the original debt with a new debt, and only the original debt was based on fraud.  The Supreme Court reversed the lower courts and found that the "settlement agreement and releases may have worked a kind of novation, but that fact does not bar the Archers from showing that the settlement debt arose out of 'false pretenses, a false representation, or actual fraud,' and consequently is nondischargeable."[53]  In other words, the Archers could argue that if the court looked behind the settlement agreement it would see that the claim is based on false pretenses, a false representation, or actual fraud.

Citing *Brown* and *Archer*, Courts addressing section 510(b) subordination have "looked behind" judgments.[54]  In *American Wagering, Inc.*, the court stated:

> The parties agree that it is appropriate for this Panel to look behind [the claimant's] district court judgment, and to examine the underlying facts in determining whether [the claimant's] claim should be subordinated [under section 510(b)]. This accord rests on solid grounds. In construing other provisions of the bankruptcy code, the United States Supreme Court has found it appropriate to look behind the disposition (whether by judgment or settlement) of underlying prepetition proceedings between a creditor and the debtor.[55]

---

[53] *Id*. at 323.

[54] *See American Wagering, Inc., v. Racusin, (In re American Wagering, Inc.)*, 326 B.R. 449, 452-53 (B.A.P. 9th Cir. 2005) *rev'd* on other grounds 465 F.3d 1048 opinion withdrawn and superseded on rehearing 493 F.3d 1067; *see also Weissmann v. Pre-Press Graphics Co., Inc. (In re Pre-Press Graphics Co., Inc.)*, 307 B.R. 65, 72-73 (N.D. Ill. 2004).

[55] *In re American Wagering, Inc.*  326 B.R. at 452. *See also In re Pre-Press Graphics Co., Inc.*, 307 B.R. at 73 ("Given the broad definition of 'claim' and the Supreme Court's willingness to look to the substance of claims in assessing whether they are nondischargeable in bankruptcy due to fraud, the court finds that for purposes of § 510(b), [the claimant's] 'claim' should be determined

Furthermore, in *Alta+Cast*, without citing *Brown* or *Archer*, this Court looked behind a judgment and subordinated a claim under section 510(b).[56]  In *Alta+Cast*, the claimant and debtor were parties to an employment agreement. The claimant received an equity interest in the debtor, and a clause in the employment agreement required the debtor (i.e., the employer) to repurchase the claimant's equity interest if the debtor terminated the claimant for cause.  The claimant subsequently brought an action in district court asserting that the debtor breached the employment agreement.  When the debtor filed for bankruptcy the claimant obtained relief from the automatic stay to pursue his district court action.  The district court jury found in favor of the claimant and required the debtor to repurchase the claimant's equity interest.  The debtor subsequently moved to subordinate the claimant's claim under both sections 510(a) and (b) of the Bankruptcy Court.  The debtor argued that the court must subordinate the claimant's claim under section 510(b) because the claim was for damages stemming from the debtor's breach of the equity repurchase agreement. In response, the claimant argued that his claim did not stem from the equity repurchase agreement, but from the breach of the parties' employment agreement.  The court in *Alta+Cast* examined the jury verdict and found that it

---

according to the substance of his state court claims and not limited to the type of relief granted by the state court.").

[56] *In re Alta+Cast, LLC*, 301 B.R. 150, 154-55 (Bankr. D. Del. 2003).

was based on the debtor's failure to repurchase the claimant's equity interest. Accordingly, the court subordinated the claimant's claim under section 510(b).[57]

The United States District Court for the District of Delaware recently dealt with section 510(b) subordination in *Cybersight*. [58]  In *Cybersight*, the claimant entered into an agreement with debtor in which the claimant purchased a 1.5% interest in the debtor and was appointed vice president of finance and administration, secretary and treasurer.  Subsequently, the debtor terminated the claimant's employment.  This termination triggered a clause in the parties' agreement which required the debtor to purchase the claimant's interest in the debtor.  The agreement required the purchase price to equal the fair value of the interest.  The parties entered into arbitration to settle on a purchase price.  The arbitrator ruled that the debtor was obligated to pay $1,290,746.19, plus interest, to the claimant.  Prior to the filing of the bankruptcy, a state court entered the arbitration award as a judgment.  The debtor did not make any payments on the judgment.  The debtor then filed bankruptcy, and, claimant filed a proof of claim in the amount of the arbitration award.  The trustee in the case moved to subordinate this claim under section 510(b) of the Bankruptcy Code.  The bankruptcy court declined to subordinate the claim under section 510(b) and the District Court affirmed this decision.[59]

---

[57] *Id*. at 155.

[58] *Burtch v. Gannon,* (*In re Cybersight LLC),* 2004 WL 2713098, *1(D.Del. Nov. 17, 2004).

[59] *Id*. at pp. *1-2.

Wax's relies heavily on *Cybersight* for the argument that the Court cannot "look behind" his judgment. However, *Cybersight* does not support this conclusion. As stated above, the claimant in *Cybersight* held an equity interest in the debtor, a dispute developed over the value of that equity interest, and the claimant obtained a prepetition judgment. The *Cybersight* claimant did not make the argument that the court could not "look behind" the claimant's state court judgment. Nevertheless, the court stated that it "evaluated [the claimant's] former equity interest and determined that it has been converted into a fixed debt obligation."[60] Therefore, to a certain extent, the *Cybersight* court did "look behind" the claimant's state court judgment. However, when the courts in *American Wagering, Inc.*, *Pre-Press Graphics* and *Alta+Cast* looked behind their respective judgments, the courts' focus was on the nature of the dispute leading to the judgment. In *Cybersight*, the analysis focused on the claimant's prior equity interest, not the nature of the dispute leading to the claimant's state court judgment.[61] To the extent *Cybersight* stands for the proposition cited by Wax, however, the Court respectfully disagrees and follow *American Wagering, Inc.*, *Pre-Press Graphics* and *Alta+Cast*.[62]

---

[60] *Id*. at *4, n. 2.

[61] *Id*.

[62] In the Third Circuit there "is no such thing as the law of the district" and, thus, the decision of a district court is not binding on a bankruptcy court. *In re Raphael*, 238 B.R. 69, 77 (D.N. J. 1999) (quoting *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371, (3d Cir. 1991)). *See also United States v. Goldberg*, 67 F.3d 1092, 1102 (3d Cir.1995) (Unpublished opinions "cannot constitute precedential authority.")

Moreover, if courts were to apply section 510(b) without looking behind the judgment, the section would be rendered inoperative. For example, assume that Wax did not sue U.S. Wireless pre-petition, but filed a claim in bankruptcy alleging fraud or other illegality in the issuance of U.S. Wireless stock. As discussed in *Telegroup*, when Congress enacted section 510(b), it relied heavily on a law review article written by Professors Slain and Kripke.[63] In their article, Professors Slain and Kripke argued that shareholder claims alleging fraud or other illegality in connection with the issuance of stock should be subordinated to the claims of general unsecured creditors.[64] Congress's reliance on this article suggests that it "considered claims alleging fraud or other illegality in the issuance of securities to be at the core of claims that 'aris[e] from the purchase or sale of ... a security' for purposes of § 510(b)."[65] Therefore, if Wax filed a claim alleging fraud or other illegality in the issuance of U.S. Wireless's stock, there is no question that the Court would subordinate it under section 510(b).[66]

However, now assume Wax sued on this hypothetical claim prepetition and the claim followed the exact same tract as Wax's actual claim, i.e., arbitration, arbitration award in Wax's favor, entry of a state court judgment confirming the order, and, finally, entry of a proof of claim for the amount of the

---

[63] *In re Telegroup, Inc.*, 281 F.3d at 139.

[64] John J. Slain and Homer Kripke, *The Interface Between Securities Regulation and Bankruptcy-Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors*, 48 N.Y.U. L.REV. 261 (1973).

[65] *Id.* at 140.

[66] *Id.* ("[C]laims alleging illegality in the issuance of securities fall squarely within the intended scope of § 510(b)…").

award. Under Wax's interpretation of section 510(b), this Court could not subordinate this hypothetical claim.   Thus, this reading leads to a situation where, based solely on the timing of events rather than the substance of the claim, a court cannot subordinate the very type of claim Congress intended to subordinate when it enacted section 510(b).[67]

Accordingly, the Court will "look behind" Wax's state court judgment and examine the nature of the proceedings leading to that judgment in order to determine whether this Court must subordinate Wax's claim under section 510(b) of the Bankruptcy Code.

### 3.  For purposes of section 510(b) of the Bankruptcy Code, there is a material difference between claims based on fixed debt obligations and claims based on a judgment.

Wax also argues that, for purposes of section 510(b) of the Bankruptcy Code, the Court must treat his judgment as it would treat a claim based on a fixed debt obligation.[68]  Courts traditionally have not subjected claims based on a fixed debt obligation to section 510(b) subordination.[69]   For example, in *Montgomery Ward Holding Corp.*,[70] the debtor exercised its rights under a

---

[67] *Id.*

[68] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, p. 15.

[69] *Official Comm. of Unsecured Creditors v. American Capital Fin. Servs., Inc. (In re Mobile Tool Intern. Inc.),* 306 B.R. 778, 782 (Bankr. D. Del. 2004) ("Thus, the Third Circuit did not alter the long-standing principle that section 510(b) does not apply to instances when separate debt notes are actually issued in exchange for the stock.").

[70] The Court in *Montgomery Ward Holding Corp.* limited section 510(b) subordination to claims which directly concern the stock transaction itself.  *See Montgomery Ward Holding Corp., v. Schoeberl (In re Montgomery Ward Holding Corp.),* 272 B.R. 836, 842 (Bankr. D. Del. 2001).  That view has since been overruled in the Third Circuit.  *See In re Telegroup, Inc.*, 281 F.3d at 142.  However, *Montgomery Ward Holding Corp.* is still good law for the proposition that section 510(b)

stockholders' agreement to purchase Montgomery Ward stock from the claimant in exchange for cash and a promissory note.[71]  The debtor agreed to repay the promissory in installments.  However, the debtor filed for bankruptcy before it paid any of the installments.  These unpaid installments formed the basis of the claimant's proof of claim, which the Debtor then moved to subordinate under section 510(b).

The *Montgomery Ward* court framed the issue before it in this way: "[t]he critical inquiry here is whether a claim based solely on the nonpayment of a promissory note issued by a debtor to consummate the repurchase of its own stock is one for damages 'arising from' the purchase or sale of its securities."[72]  The debtor argued that the claimant's status as a former shareholder somehow differentiated the claimant from other note holders and general unsecured creditors.  The Court was "not persuaded that the Note's origin as payment for stock is relevant under § 510(b)." [73]

Likewise, in *Mobile Tool International*, the claimants exchanged their equity interests for a separate debt instrument pre-petition.[74]  The Bankruptcy Court did not subordinate the claimants' claim because, in the Court's opinion, "[w]hen

---

subordination is not proper when the claim is based on a fixed debt obligation.  *See In re Mobile Tool Intern., Inc.*  306 B.R. at 780 ( "Claims based on a debtor's note are not subject to section 510(b) subordination because such claims are only for the recovery of an unpaid debt.").

[71] *In re Montgomery Ward Holding Corp.*, 272 B.R. at 839.

[72] *Id.* at 841.

[73] *Id.*

[74] *In re Mobile Tool Intern. Inc.,* 306 B.R. at 779.

the [claimants] received the promissory notes, they removed the variable nature of their investment and placed themselves in the position of general creditors. Their claims are not the type which section 510(b) mandates be subordinated."[75]

Wax attempts to draw an analogy between himself and the claimants in *Mobile Tool International*.[76] To support this argument, he again relies heavily on *Cybersight*.  In *Cybersight*, the court states that "there is no material difference between the exchange of a promissory note for equity interests, which has been held not to be subject to Section 510(b) and the judgment [the claimant] received in this case."[77]  The *Cybersight* court further stated that, "[i]n both instances, the claimants [in both *Mobile Tool International* and *Cybersight*], pre-petition, were no longer able to participate in the benefits and risks associated with being equity holders of the debtors, and therefore, Section 510(b) did not require subordination."[78]  Therefore, according to Wax, this Court should treat his claim as it would treat a claimant who exchanges his or her equity interest for a promissory note.

A comparison of *Alta+Cast* to *Mobile Tool International* demonstrates, however, that claims based on a fixed debt instrument are treated differently from claims based on a judgment debt.  In both *Alta+Cast* and *Mobile Tool International,* the debtor agreed pre-petition to repurchase the claimant's equity

---

[75] *Id*. at 782.

[76] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, p. 15.

[77] *In re Cybersight LLC*, 2004 WL 2713098, *4 (D. Del. Nov. 17, 2004) (internal citations omitted).

[78] *Id*.

interest.[79]   In *Mobile Tool International*, the debtor issued notes to the claimant when the debtor repurchased the claimant's equity interest.[80]   In *Alta+Cast*, however, the claimant sued the debtor for breach of the parties' employment agreement and the district court jury concluded in a special verdict that the claimant "was terminated by the Debtor… for just cause or failure to perform, [and] pursuant to the terms of the Employment Agreement… the Debtor was obligated to repurchase [the claimant's] ownership interest… [for] $2,260,000 plus interest from the date of termination."[81]   In *Alta+Cast*, the Court subordinated the claimant's claim under section 510(b).[82]   However, in *Mobile Tool International* the Court did not.[83]   Chief Judge Walrath decided both cases and in *Mobile Tool International* she stated:

> Once again, the facts in *Alta+Cast* are distinguishable from this case because no separate debt instrument was issued and the claimant did not change his status from owner to creditor.
>
> The fundamental concept in the cases cited by the Plaintiffs [which included *Alta+Cast*] is that the nexus or causal connection required to employ section 510(b) exists where stock is retained by the claimant. When the stock is exchanged and a separate debt instrument is issued by

---

[79] *In re Mobile Tool Intern., Inc.*, 306 B.R. at 779 ("[T]he Individual Defendants and the Debtors entered into a Stockholder Agreement wherein the Debtors agreed, upon notice, to repurchase the Class B Common Stock in the Debtors' company which had been purchased by the Individual Defendants."); *In re Alta-Cast, LLC*, 301 B.R. at 153 n.3 ("Section 10(b) of the Employment Agreement provided that if Hays' employment were terminated for cause, the Debtor would repurchase Hays' membership interest in the Debtor.").

[80] *In re Mobile Tool Intern., Inc.*, 306 B.R. at 779.

[81] *In re Alta+Cast, LLC*, 301 B.R. at 152-53.

[82] *Id*. at 155.

[83] *In re Mobile Tool Intern., Inc.*, 306 B.R. at 782.

the debtor, however, the claimant is converted from an owner of stock to a creditor.  Such is the case here.[84]

Wax argues that there is no basis for this distinction between claims based on a fixed debt obligation and claims based on a money judgment.[85]  However, section 101(5) of the Bankruptcy Code defines "claim" in relevant part as a "right to payment whether or not such right is reduced to judgment… ."[86]  *This indicates that a claim exists before a judgment is entered.*[87]  Therefore, Wax's claim is not simply a fixed debt obligations arising from the state court judgment.  Rather is the claim he asserted against U.S. Wireless at state court and upon which the arbitrator based Wax's recovery.  Under section 101(5) of the Bankruptcy Code, Wax's claim is not altered by the state court judgment.  Conversely, when a claimant exchanges his or her equity interest for a fixed debt obligation the equitable nature of the claim is extinguished.[88]  The Court will continue to follow this distinction between claims based on a fixed debt obligation and claims based on a judgment arising from an equity interest.

Wax also cites to *American Wagering, Inc.* to support the proposition that his claim is properly treated as a claim based on a separate debt instrument.[89]  In *American Wagering, Inc.*, the debtor hired the claimant as a financial advisor in

---

[84] *Id.* at 781.

[85] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, p. 15.

[86] 11 U.S.C. §101(5).

[87] *See In re Pre-Press Graphics Co., Inc.*, 307 B.R. at 71.

[88] *In re Mobile Tool Intern., Inc.*  306 B.R. at 781; and *The Consolidated FGH Liquidating Trust v. Marler (In re The Consolidated FGH Liquidating Trust)*, 2007 WL 2955952, *4 (S.D. Miss. Oct. 2, 2007).

[89] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, pp.15-16.

connection with the debtor's IPO.[90]   The terms of the agreement between the parties called for the claimant's compensation "to be *valued* on the basis of the debtors' share price upon completion of the IPO, the contract did not provide for that compensation in the form of shares."[91]   The debtor sued the claimant in district court over the employment agreement and the claimant filed a counterclaim.   The district court found for the claimant and awarded the claimant damages of $2,310,000.  The debtor subsequently filed bankruptcy, the claimant filed a claim based on the district court judgment, and the debtor sought to subordinate under section 510(b).

The Ninth Circuit declined to subordinate the claim.[92]   The Ninth Circuit reasoned that 510(b) did not apply because the claimant *never agreed, intended, or ever became an equity holder*; his compensation was simply *valued* by the share price.[93] Wax cites to *American Wagering , Inc*. as case, analogous to his, in which the court decided not to subordinate a claim under section 510(b).[94]   However, Wax misreads one critical fact in *American Wagering*.  Wax states that the claimant in *American Wagering* stood to receive, "4.5% of the company's valuation upon an initial public offering, *all but $150,000 of which was to be paid in the debtor's common*

---

[90] *Racusin v. American Wagering, Inc., (In re American Wagering, Inc.)*, 493 F.3d 1067, 1069 (9th Cir. 2007).

[91] *Id*. at 1072 (emphasis in original).

[92] *Id*. at 1069.

[93] *Id*. at 1073 (emphasis added).

[94] Brief in Support of Defendant Mati Wax's Motion for Summary Judgment, pp. 15-16.

*stock.*"[95] This is simply an incorrect reading of the case.  Unlike Wax, the claimant

in *American Wagering* did not contract to become an equity holder.[96]  Therefore,

*American Wagering, Inc.*, is not analogous to Wax's case and does not support the

proposition that a court should treat claims based on a judgment in the same

way as claims based on a separate debt instrument.

### 4.    Section 510(b) Subordination Analysis of Wax's Claim

Having  addressed  whether  the  Court  may  "look  behind"  Wax's  state

court  judgment,  the  Court  now  turns  to  the  actual  analysis,  which  is  easily

performed.  In the complaint filed by Wax against U.S. Wireless in the Superior

Court of California, Wax alleged breach of contract and breach of the implied

covenant of good faith and fair dealing.[97]   In his breach of contract claim, Wax

alleged  that  as  a  direct  and  proximate  cause  of  U.S.  Wireless's  breach  of  the

employment  agreement  between  the  parties  Wax  suffered  damages  "including

but not limited to the loss of wages and benefits, including his rights pursuant to

---

[95] Id. at p. 16 (emphasis added).

[96] *In re American Wagering, Inc.*  493 F.3d at 1071 ("The original …contract, which promised [the claimant] 4% of the final evaluation' of the IPO, only gave him the monetary value of the shares of stock, not the stock itself. [The debtor] never upheld its end of the contract, resulting in a lawsuit for breach seeking damages based on the value of the stock. [The claimant] received that money judgment and initiated legal action to receive it long before the bankruptcy proceeding at issue here commenced. [The claimant] thus sought all along what was promised by the contract-the monetary value of the stock, rather than the stock itself-and the district court, after some direction from this Court, effectuated the contractual remedy as well. Accordingly, his claim in the bankruptcy proceeding is more akin to that of a creditor than an investor and subordinating his claim as "arising from the purchase or sale" of stock would not serve the underlying purposes of subordination under section 510(b).").

[97] Stipulation of Facts By and Between the Liquidating Trust of US Wireless Corp., et al., and Mati Wax, ¶9 (Exhibit I, ¶¶ 12-20).

the stock option agreement, the restricted stock agreement and the private placement opportunity for [U.S. Wireless] employees."[98]   In Wax's claim for breach of the implied covenant of good faith and fair dealing, Wax alleged that U.S. Wireless "terminated his employment… in whole or in part to prevent the vesting of options for shares of [U.S. Wireless] stock, to prevent the removal of restrictions on restricted [U.S. Wireless] stock, and to deprive [Wax] of his opportunity to participate… in the Spring 1999 private placement of [U.S. Wireless] stock."[99]

Wax further alleged that these actions violated the implied covenant of good faith and fair dealing and, as a result, Wax suffered the following damages: "lost wages… [lost] value of the options and restricted stock which would have vested… plus the spread between the purchase price of the stock offered in the Spring 1999 private placement and the market price of such stock… ."[100]   Wax alleged that the damages for each cause of action exceeded $750,000.[101]

Turning to the arbitrator's award, we see that the arbitrator found that U.S. Wireless breached the employment agreement between U.S. Wireless and Wax.[102]   This finding required the arbitrator to determine the value of the stock and various other equity interests Wax would have received if U.S. Wireless had

---

[98] *Id.*, ¶9 (Exhibit I, ¶ 15).

[99] *Id.*, ¶9 (Exhibit I, ¶ 18).

[100] *Id.*, ¶9 (Exhibit I, ¶¶ 19-20).

[101] *Id.*, ¶9 (Exhibit I, pp. 6-7).

[102] *Id.*, ¶6 (Exhibit F, p. 1).

not breached the employment agreement. The damages Wax received were based on this determination.

Furthermore, Wax fails to argue why the damages awarded to him do not arise from the purchase and sale of a security. As stated above, Wax simply argues that because his arbitration award was reduced to judgment the Court is precluded from considering the nature of his state court claims.

Based on the claims asserted by Wax at state court and upon which the arbitrator based Wax's recovery, it is clear that Wax's claim is for damages arising from the purchase or sale of the Equity Package. Accordingly, the Court is required to subordinate Wax's claim, except for the unsecured wage claim in the amount of $26,330.00, under section 510(b) of the Bankruptcy Code.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court grants the Plaintiff's motion for summary judgment and denies the Defendant's motion for summary judgment. An order will be issued.